[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: POST-JUDGMENT MOTION FOR CONTEMPT DATED JULY 20, 2001 (#145)
The parties were divorced on February 23, 2000. The parties are presently before the court on a post judgment Motion for Contempt dated July 20, 2001.
The Memorandum of Decision awarded to the plaintiff one-half of the CT Page 13765 Hartford Life Putnam account. This account was in both names and the defendant gave the account a value of $111,000.00 on his financial affidavit dated February 9, 2000. The defendant is an account representative for MetLife.
The plaintiff alleges she made numerous efforts to obtain her one-half of this account, but without success, which precipitated the filing of this Motion for Contempt.
Some of the delay must be attributed to the Hartford Insurance Company itself. Further, Hartford Insurance Company gave an incorrect value to the defendant, which further complicated matters. In addition, the agent assisting the plaintiff was ill with cancer. This witness testified she did not always record her phone calls from the plaintiff and could not recall if the plaintiff called her prior to January 4, 2001, although she thought the calls might have been in July or August 2000.
Prior to January 2001, the parties were in court in other unrelated matters. However, no mention was made of the plaintiff's award of one-half of this account, although both parties were represented by counsel (the original trial counsel in the dissolution trial).
The defendant was well aware of the plaintiff's interest in one-half of the Hartford Life account. Perhaps technically, it was not the defendant's obligation to determine what steps were necessary to transfer the plaintiff's share. In view of the history between these parties, it would have been in the defendant's best interest to sever all ties he had with the plaintiff, without delay, especially with his expertise as an account representative with MetLife and some knowledge of the volability of this account.
In any event, the plaintiff made some phone calls and had contact with the financial analyst requesting a transfer of her share of the account. This contact occurred some time in the Summer of 2000. However, it was not until after the first of January, 2001, that the insurance company advised the plaintiff of the requirements necessary to transfer one-half of the account to the plaintiff. There was no evidence presented that prior to January 1, 2001 the defendant was advised of what he had to do to transfer one-half of this account to the plaintiff.
Another agent, a Cynthia Daley, who was not called as a witness, now writes to the plaintiff on January 16, 2001 advising the plaintiff what had to be done to effectuate the transfer (Defendant's Exhibit D), after receiving the plaintiff's request for liquidation dated January 8, 2001.
There was no evidence presented that the first agent, Eileen H. Leone, CT Page 13766 or the plaintiff had contacted the defendant prior to January 1, 2001 to advise him to send a letter to the company indicating his agreement and the dollar amount to be divided. The plaintiff wrote a letter dated August 4, 2000 to Mrs. Leone requesting liquidation of her one-half interest. Mrs. Leone claimed not to have received this letter (Defendant's Exhibit B). However, nowhere in the letter is there any reference as to the requirement that the defendant had to send in a letter as to agreement and amount.
No evidence was presented that Mrs. Leone contacted the defendant concerning this requirement prior to January 1, 2001. The plaintiff and the agent, Cynthia Daley, exchanged letters in January and February 2001, but as of March 15, 2001, Hartford Life did not have the necessary paperwork to transfer this account (Defendants Exhibit G).
On January 16, 2001, the defendant George Fedor acknowledged the court order and acknowledged that the plaintiff was entitled to one-half the value of the annuity, valued as of February 23, 2000, the date of the decree of dissolution (Defendant's Exhibit E). Unfortunately, the Hartford Life gave the defendant the incorrect figure as to the value of this account. It was not until August 17, 2001 that Hartford Life rectified this figure and gave the defendant the correct contract value of $119,785.93.
By letter dated February 23, 2001, Cynthia Daley from Hartford Life gave the plaintiff the correct value of the annuity as of February 23, 2000 (Plaintiff's Exhibit 1). Mr. Fedor, the defendant, was not notified of this correct value until August 17, 2001.
Mr. Fedor, the defendant was very willing to transfer half of the annuity to the plaintiff when he thought it had a value of $89,000. (Def.'s Ex. E) (a decrease of approximately $22,000. from the amount listed on his February 9, 2000 Financial Affidavit).
It is a matter of general knowledge that the Stock Market fluctuates up and down. There was no evidence presented as to the reason it took Hartford Life from January 16, 2001 until their letter dated August 17, 2001 (Def.'s Ex. F) to give the defendant the correct contract value of this annuity. It would see, that the defendant must have been receiving statements from the Hartford Life concerning the value of his annuity, however there was no evidence presented on this issue.
The plaintiff should not be penalized and be denied her rightful share because Hartford Life gave an incorrect figure to the defendant and failed to remedy this error until August 17, 2001 (Def.'s Ex. F). By letter dated January 16, 2001 (Def.'s Ex. E) Hartford Life was aware of CT Page 13767 this discrepancy as per defendant's letter of January 16, 2001. The defendant was prepared to transfer half the value of the annuity to the plaintiff when he thought the value was $89,000.
As between the plaintiff and the defendant, the equities lie with the plaintiff who made numerous attempts to obtain the transfer of her one-half interest in the Annuity as per the trial court's order. The fact that her efforts to obtain her one-half interest were stymied by the Hartford Life should not work to her detriment. The defendant sat back and did nothing, although as an account representative with Met Life he would be aware of the fluctuations of the market and could have protected himself by making efforts to transfer the account based on its value as of February 23, 2000. Because of the ongoing bitterness between the parties, he chose to do nothing until sometime in January 2001.
The plaintiff was awarded one half of this account And that is what she is entitled to receive.
It was implicit in the court's order that both parties would cooperate and execute any documents necessary to effectuate the orderly transfer of the accounts in question, and to do so promptly and without delay.
The defendant's letter of March 27, 2001 clearly places him in Contempt of the Court's order which awarded the plaintiff one-half of the Hartford account.
The following orders are entered:
1. The defendant shall transfer to the plaintiff, one-half of the Hartford Life asset valued as of January 3, 2001. Both parties will have to share in any increase or decrease of this asset. The court has weighed the equities of both parties in fixing the date of January 3, 2001. Both parties shall co-operate to execute the appropriate documents required by Hartford Life to effectuate this transfer.
2. It was the court's intent that the defendant not be subject to any surrender charges or any tax consequences.
3. Hartford Life should be advised to expedite this matter. The court finds it unconscionable that Hartford Life made such an egregious error in the contract value of this account and took so long to correct its error.
4. Counsel fees are awarded to the plaintiff in the amount of $1500. to be paid by the defendant within 45 days of date. CT Page 13768 5. No interest is awarded to the plaintiff.
6. No other award is made to the plaintiff.
COPPETO, J.